# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JASON WAGSTER & ELENA AUCOIN

VERSUS

SIDNEY J. GAUTREAUX, III, IN HIS
CAPACITY AS SHERIFF OF EAST
BATON ROUGE PARISH, CITY/PARISH
OF EAST BATON ROUGE, THROUGH
MAYOR MELVIN L. "KIP" HOLDEN,
LIEUTENANT DARRYL MICHELLI, AND
CERTAIN UNKNOWN OFFICERS

CIVIL ACTION

NO. 12-00011-SDD-SCR

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a *Motion for Summary Judgment*[1] filed by Defendants, Sidney J. Gautreaux, III, in his capacity as Sheriff of East Baton Rouge Parish, Lt. Darryl Michelli, Detective Rob Chambers, Detective Eric David, Detective Nathan Harrison, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, Detective Eric Jones, and Sergeant Bobby Moore (collectively, "Officers" or "Defendants"). Plaintiffs, Jason Wagster and Elena Aucoin, have filed an *Opposition*[2] to the motion to which Defendants have filed a *Reply*.[3] For the following reasons, Defendants' *Motion for Summary Judgment* is GRANTED IN PART and DENIED IN PART.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiffs have filed this action under 42 U.S.C. § 1983 alleging violations against each of the Defendants in their individual and official capacities under the Fourth and

---

[1] Rec. Doc. 38.
[2] Rec. Doc. 41.
[3] Rec. Doc. 46.

Fourteenth Amendments of the United States Constitution for illegally searching their homes and personages; they have also asserted various state law claims. Individually, Plaintiff Jason Wagster alleges a state law claim against Defendants for assault and battery, while both Plaintiffs allege state law claims for false arrest, illegal detainment and imprisonment, and for intentional infliction of emotional distress against all of the Defendants.[4] Plaintiffs have also alleged that "Defendants Lieutenant Daryl Michelli and Certain Other Unknown Officers" used excessive force during the unwarranted searches and investigations.[5] Plaintiffs' claims allegedly arise out of two "unwarranted, unjustified, and wholly improper 'investigations' of their home" on January 7, 2011 and April 4, 2011 by Defendants.[6]

Plaintiffs have also raised 42 U.S.C. § 1983 claims against Sheriff Gautreaux in his official capacity contending that his policies and customs do not require "appropriate in-service training or retraining of officers who were known to have engaged in police misconduct."[7] Plaintiffs further contend that these acts, customs, and policies "amounted to deliberate indifference to the Plaintiffs' constitutional rights and proximately caused their injuries."[8] As for their state law claims, Plaintiffs allege that Sheriff Gautreaux is vicariously liable for the tortious acts of his Defendant employees under the doctrine of *respondeat superior*.[9] Plaintiffs specifically allege that Defendants "wrongfully detained, arrested, falsely imprisoned, illegally searched, and

---

[4] Rec. Doc. 1, p. 12, ¶¶86-87, 89-90; p. 16, ¶¶105-106; Rec. Doc. 10, p.13, ¶86; p. 14, ¶89; p. 18, ¶¶105-106.
[5] Rec. Doc. 1, p. 17, ¶113; Rec. Doc. 10, p. 19, ¶113.
[6] Rec. Doc. 1, p. 2, ¶10; Rec. Doc. 10, p. 3, ¶10.
[7] Rec. Doc. 1, p. 14, ¶97; Rec. Doc. 10, p. 16, ¶97.
[8] Rec. Doc. 1, p. 15, ¶100; Rec. Doc. 10, p. 16, ¶ 100.
[9] Rec. Doc. 1, p. 15, ¶101;Rec. Doc. 10, p. 17, ¶101.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 2 of 39

viciously abused" Plaintiffs and should be held accountable under state law.[10] Plaintiffs seek compensatory damages, as well as costs and reasonable attorney's fees, per 42 U.S.C. § 1988.

Defendants deny Plaintiffs' allegations and maintain that they acted reasonably under the circumstances, in accordance with their training and the law, and are, therefore, entitled to qualified immunity.

### A. January 7, 2011 Incident

The parties have stipulated that on, January 7, 2011, "several EBRSO detectives, including Detective Eric Jones, Detective Rob Chambers, Detective Len Starnes, and Detective Nathan Harrison, arrived [at] the Wagster residence."[11] At the time of their arrival, Plaintiff Wagster was not at home.[12] Plaintiff Aucoin greeted the Officers prior to knocking on the home's door.[13] The Officers had no search warrant to enter the home.[14] The Officers have claimed that they had received complaints from neighbors regarding Plaintiffs' residence and its occupants.[15] When the Officers asked Aucoin for permission to enter the home, she denied their request.[16] Plaintiff Aucoin was never told she could not enter her home.[17] In fact, one of the Officers told Ms. Aucoin to reenter her home to retrieve her brother, which she did.[18] Upon exiting the home, the officers began questioning Aucoin and her brother.[19] The Officers left

---

[10] Rec. Doc. 1, p. 15, ¶104; Rec. Doc. 10, p. 18, ¶104.
[11] Rec. Doc. 38-4, ¶1.
[12] Rec. Doc. 38-4, ¶1.
[13] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, p. 40.
[14] Rec. Doc. 1, p. 5, ¶30; Rec. Doc. 10, p. 6, ¶30.
[15] Rec. Doc. 1, p. 5, ¶27; Rec. Doc. 10, p. 6, ¶27.
[16] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, p.19.
[17] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, p. 20.
[18] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, p. 20.
[19] Rec. Doc. 1, p. 6, ¶35; Rec. Doc. 10, p. 7, ¶35.

Plaintiffs' property without entering the residence.[20]  Plaintiffs contend that the event was captured on their home surveillance video camera.[21]

**B.    April 4, 2011 Incidents**

On April 4, 2011 there were two alleged incidents that occurred at the Wagster residence.  The first incident occurred when "a U.S. Marshal's task force comprised of Task Force Officer and EBRSO Deputy Bobby Moore, Task Force Officer Nick "Doe", Task Force Officer Dave Flausse, Task Force Officer Mike Lorio, and Task Force Officer Larry Walters arrived at the Wagster residence looking for a fugitive from a Livingston Parish case who, upon information and belief, resided at the Wagster residence."[22]  Before the Officers had an opportunity to knock on the door, Plaintiff Wagster exited his home through the screen door and met them outside.[23]  At some point thereafter, Plaintiff Wagster was brought to the ground and handcuffed. However, the factual circumstances between the time Wagster exited his home and the time he was handcuffed are disputed by the parties.

Plaintiff Wagster claims he was grabbed by an Officer who pointed his gun at Wagster's dog that had also exited Plaintiffs' home.  Wagster has also alleged that he "pulled the dog back to himself" when the officer "retrained his weapon directly at [Wagster's] head."[24]  Wagster alleges that this same Officer subsequently grabbed him and threw him to the ground, causing him severe neck injuries and scrapes on his knees; thereafter, Wagster contends another Officer grabbed him and aggressively

---

[20] Rec. Doc. 38-4, ¶2.
[21] Rec. Doc. 1, p. 6, ¶¶39-40; Rec. Doc. 10, p. 7, ¶39.
[22] Rec. Doc. 38-4,p. 2, ¶4.
[23] Rec. Doc. 38-8, Exhibit D, Deposition of Jason Michael Wagster, pp. 26-27; Rec. Doc. 38-5, Affidavit of Bobby Moore, ¶5.
[24] Rec. Doc. 1, p. 7, ¶¶45-46; Rec. Doc. 10, p. 8, ¶¶45-46.

handcuffed him, leaving marks and abrasions on his wrist.[25] He further alleges that he was "detained" and "patted down" in a contraband search.[26] Wagster claims that the Defendants "kicked in a door and entered the home, breaking a porch door frame in the process."[27] After the Officers exited Plaintiff's home, Wagster alleges that he was released from the handcuffs and the Task Force Officers departed.[28]

The Officers have a contrary view of the events preceding Plaintiff's detainment. According to Sergeant Bobby Moore ("Moore"), Plaintiff Wagster was detained for resisting an officer after he walked away from the Officers and slammed a screen porch door on Task Force Officer Mike Lorio, who then placed Wagster on the ground.[29] Moore contends that he and Task Force Officer Dave Flausse then handcuffed Wagster.[30] Thereafter, Sergeant Moore entered Plaintiffs' home to conduct a protective sweep which lasted approximately 18 seconds.[31] After conducting the sweep, the Officers left the Plaintiffs' property. Plaintiffs contend that the event was captured on their home surveillance video cameras.[32]

The second incident at Wagster's residence occurred later the same morning. The parties agree that Officers, *inter alia*, Moore and Harrison returned to Plaintiffs' home. On this second visit Plaintiff has alleged that, upon exiting his home, two officers

---

[25] Rec. Doc. 1, p. 7, ¶¶ 47-49; Rec. Doc. 10, p. 8, ¶¶47-49.

[26] Rec. Doc. 1, p. 3, ¶ 12; Rec. Doc. 10, p.3, ¶12 .

[27] Rec. Doc. 1, p. 7, ¶52; Rec. Doc. 10, p. 8, ¶52.

[28] Rec. Doc. 1, p. 8, ¶57; Rec. Doc. 10, p. 9, ¶57.

[29] Rec. Doc. 38-5, Exhibit A, Affidavit of Bobby Moore, ¶¶6-7; Rec. Doc. 38-3, p. 9. Mike Lorio is no longer a Defendant in this suit as the Court granted his dismissal for Plaintiffs' failure to timely serve him. May 29, 2013 Order.

[30] Rec. Doc. 38-5, Exhibit A, Affidavit of Bobby Moore, ¶7. On October 7, 2013, the Court entered an order granting the dismissal of all claims against Defendant Dave Flausse in his individual capacity. Rec. Doc. 51.

[31] Defendants contend that as part of discovery, Plaintiffs turned over copies of a video recording of Defendants' activities at Plaintiffs' residence. The 18 seconds to conduct the protective sweep was based on Defendants' review of the video.

[32] Rec. Doc. 1, p. 8, ¶56; Rec. Doc. 10, p. 9, ¶56.

informed him that he was being detained but offered no additional information. Subsequently, two additional officers arrived at Plaintiffs' home. Thereafter, Plaintiff Wagster provided both written and verbal consent to the Officers' request to enter and search Plaintiffs' home.[33] The Officers completed their search without finding anything in Plaintiffs' residence.[34]

## II. APPLICABLE LAW

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[35] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[36] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[37] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[38] However, the non-moving party's burden "is not

---

[33] Rec. Doc. 38-6, Exhibit B, Affidavit of Nathan Harrison, ¶3; Rec. Doc. 38-8, Deposition of Jason Michael Wagster, pp. 47-48.
[34] Rec. Doc. 38-8, Deposition of Jason Michael Wagster, p. 48.
[35] Fed.R.Civ.P. 56(a)(West 2013).
[36] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).
[37] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323-25, 106 S.Ct. at 2552).
[38] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[39]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[40] All reasonable factual inferences are drawn in favor of the nonmoving party.[41] Nevertheless, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[42] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[43] Ultimately "[t]he substantive law dictates which facts are material."[44]

## B.  Claims Brought Under 42 U.S.C. § 1983

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[45] In order to state a claim under 42 U.S.C. § 1983 the plaintiff must: "(1) allege that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) demonstrate that the

---

[39] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal citations omitted)).

[40] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[41] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[42] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline, Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[43] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[44] *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).

[45] *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 7 of 39

conduct or deprivation complained of was committed by a person acting under color of state law."[46]   As for the first element, 42 U.S.C. § 1983 only imposes liability for violations of rights protected by the United States Constitution—not for violations of duties of care arising out of tort law.[47]   As to the second element, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[48]

## III.   ANALYSIS

### A.   42 U.S.C. § 1983 Claims Against Defendants in their Official Capacities

Plaintiffs have brought claims against Sheriff Gautreaux, Lieutenant Darryl Michelli, Detective Rob Chambers, Detective Eric David, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, Detective Eric Jones, Sargent Bobby Moore, and Detective Nathan Harrison in their official capacities under 42 U.S.C. § 1983.   "An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent."[49]   To determine whether a public official is liable in his official capacity, "the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983."[50]   Although municipalities cannot be held liable in a Section 1983 action under the theory of *respondeat superior*, they may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

---

[46] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D.La. 1998). *See also*, *Elphage v. Gautreaux*, 2013 WL 4721364, *5 (M.D. La. Sept. 3, 2013).
[47] *Id.* at 2695.
[48] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).
[49] *Hills v. Stevens*, 2012 WL 3779138, *3 (M.D.La. Aug. 31, 2012) (citing, *Kentucky v. Graham*, 473 U.S.159, 165-66, 105 S.Ct. 3099, 3104-06, 87 L.Ed. 2d 114 (1985)).
[50] *Quatroy v. Jefferson Parish Sheriff's Office*, 2009 WL 1380196, *3 (E.D.La. May 14, 2009).

policy, inflicts the injury."[51]  Municipal liability under 42 U.S.C. § 1983 requires proof of the following three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[52]  "Proof of these three elements is necessary to distinguish individual violations perpetrated by local government employees form those that can be fairly identified as actions of the government itself."[53]

Plaintiffs have neither alleged nor offered any evidence contending that Lieutenant Darryl Michelli, Detective Rob Chambers, Detective Eric David, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, Detective Eric Jones, Sargent Bobby Moore, and Detective Nathan Harrison are policymakers for East Baton Rouge Parish.  As deputy sheriffs with the East Baton Rouge Sheriff's Office, these Defendants are appointed public officers for their parish law enforcement district, of which the Sheriff is the head.  Since deputy sheriffs are not policymakers for the East Baton Rouge Parish Sheriff's Office, the claims against Lieutenant Darryl Michelli, Detective Rob Chambers, Detective Eric David, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, Detective Eric Jones, Sargent Bobby Moore, and Detective Nathan Harrison in their official capacities will be dismissed.

Under Louisiana law, however, Defendant Sheriff Gautreaux is deemed to be the final policymaker and may be sued in his official capacity.[54]  Therefore, Plaintiffs' official

---

[51] *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978).
[52] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(citing *Monell*, 436 U.S. at 694).
[53] *Quatroy*, 2009 WL 1380196, *4 (citing *Piotrowski*, 237 F.3d 567, at 578).
[54] *Elphage v. Gautreaux*, 2013 WL 4721364, *16 (M.D.La. Sept. 3, 2013)(hereafter "*Elphage*"); *Craig v. St. Martin Parish Sheriff*, 861 F.Supp. 1290, 1300 (W.D.La. 1994)(citing La. Const. Art. 5, § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish.")).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 9 of 39

capacity claims against Sheriff Gautreaux are actually claims against East Baton Rouge Sheriff's Office.

Plaintiffs allege that it was the policy and/or custom of Sheriff Gautreaux, and therefore the East Baton Rouge Sheriff's Office, "to inadequately and improperly investigate citizen complaints of misconduct, and acts of misconduct were instead tolerated,"[55] "to inadequately supervise and train its police officers,"[56] and "to not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct."[57] Plaintiffs further allege that Sheriff Gautreaux, and therefore the East Baton Rouge Sheriff's Office, "had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action,"[58] and they "instituted and supported unconstitutional acts, customs, and policies whereby Officers/Deputies with the East Baton Rouge Parish Sheriff's Office … were permitted and encouraged to engage in the abuse of their status in pursuit of personal vendettas and grievances."[59] According to Plaintiffs, "the acts, customs, and policies" of Sheriff Gautreaux, and therefore the East Baton Rouge Sheriff's Office, "amounted to deliberate indifference to the Plaintiffs' constitutional rights and proximately caused their injuries."[60]

In claims for failure to supervise or train arising under 42 U.S.C. § 1983, the plaintiff must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to

---

[55] Rec. Doc. 1, p. 13, ¶93; Rec. Doc. 10, p. 14, ¶93.
[56] Rec. Doc. 1, p. 14, ¶96; Rec. Doc. 10, p.15, ¶96.
[57] Rec. Doc. 1, p. 14, ¶97; Rec. Doc. 10, p. 16, ¶97.
[58] Rec. Doc. 1, p. 13, ¶ 95; Rec. Doc. 10, p. 15, ¶95.
[59] Rec. Doc. 1, p. 14, ¶99; Rec. Doc. 10, p. 16, ¶99.
[60] Rec. Doc. 1, p. 15, ¶102; Rec. Doc. 10, p. 16, ¶100.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 10 of 39

deliberate indifference."[61] "Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that a lack of training for supervision causes a violation of his constitutional rights."[62] "For liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."[63] In order "[t]o establish deliberate indifference, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'"[64] However, if a plaintiff "fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability."[65]

Plaintiffs have not directed the Court to any evidence to establish a genuine issue of material fact as to whether Sheriff Gautreaux in his official capacity failed to properly train, supervise, or discipline the officers or that the failure to train, supervise, or discipline amounted to deliberate indifference. In fact, Plaintiffs' depositions demonstrate that no genuine issue of material fact exists as to these particular claims. Specifically, Plaintiff Wagster testified that: (1) he had no knowledge about any policies or customs of Sheriff Gautreaux exhibiting deliberate indifference;[66] (2) he had no information to indicate that Sheriff Gautreaux inadequately investigated citizens' complaints;[67] and (3) he had no information about Sheriff Gautreaux's training of his deputies.[68] Likewise, Plaintiff Aucoin was unable to specify how Sheriff Gautreaux's

---

[61] *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).

[62] *Mannino v. Gautreaux*, 2001 WL 5158299, *4 (M.D.La. Oct. 28, 2011).

[63] *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

[64] *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)(citing *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)).

[65] *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).

[66] Rec. Doc. 38-8, Exhibit D, Deposition of Jason Michael Wagster, pp. 66-67.

[67] Rec. Doc. 38-8, Exhibit D, Deposition of Jason Michael Wagster, pp. 67-68.

[68] Rec. Doc. 38-8, Exhibit D, Deposition of Jason Michael Wagster, p. 68.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 11 of 39

training of his deputies was defective; instead, her testimony was limited to her own subjective belief that Defendants' actions were "wrong" in the handling of her situation.[69] Plaintiffs have not provided evidence of any other instances of lack of training or supervision involving the Deputy Defendants that caused violations of other citizens' constitutional rights so as to establish a pattern for purposes of deliberate indifference. Therefore, the Court finds that Plaintiffs have not raised any disputes of material fact regarding the policies or customs of the East Baton Rouge Sheriff's Office.

Accordingly, Defendants' *Motion for Summary Judgment* is granted as to all of Plaintiffs' 42 U.S.C. § 1983 claims against Sheriff Gautreaux in his official capacity.

### B.    42 U.S.C. § 1983 Claim Against Defendants in Their Individual Capacity

Plaintiffs also assert claims under 42 U.S.C. § 1983 against Sheriff Gautreaux, Lieutenant Darryl Michelli, Detective Rob Chambers, Detective Eric David, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, Detective Eric Jones, Sergeant Bobby Moore, and Detective Nathan Harrison in their individual capacities. In response, Defendants have raised the affirmative defense of qualified immunity.

"The qualified immunity defense entitles a defendant to avoid the 'burdens of litigation' as well as liability."[70] Qualified immunity protects an official acting under color of state law in their individual capacity "from liability of civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[71]

---

[69] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, pp. 39-40.
[70] *Elphage*, 2013 WL 4721364, *5, citing *Manis v. Lawson*, 585 F.3d 839, 843 (quoting *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985)).
[71] *Batiste v. Theriot*, 458 Fed.Appx. 351, 354 (5th Cir. 2012)(citing *Turner v. Houma Mun. Fire & Pol. Civil Serv. Bd*, 229 F.3d 478, 482 (5th Cir. 2000)); *see also*, *Thornhill v. Breazeale*, 88 F.Supp.2d 647, 653

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 12 of 39

"A qualified immunity defense alters the usual summary judgment burden of proof."[72]  Once the defendant raises the qualified immunity defense, "the burden rests on the plaintiff to rebut it."[73]  The well-established qualified immunity analysis has two prongs.  "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."[74]  In order to satisfy this burden, the plaintiff must show genuine disputes of material fact for a reasonable trier of fact to determine: (1) that the defendants violated the plaintiff's constitutional rights, and (2) that the violation was objectively unreasonable in light of the clearly established law at the time of the incident.[75]  The court may "exercise its discretion in determining which of the two prongs to address first."[76]

"'Clearly established' means that the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[77]  "Unless *all* reasonable officers in the defendant's circumstance would have known that the conduct in question violated the constitution, the defendant is entitled to

(S.D. MS. 2000)("A defendant acting in his individual capacity may invoke the doctrine of qualified immunity to shield himself from liability.")).

[72] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[73] *Hebert v. Maxwell*, 214 Fed.Appx. 451, 454 (5th Cir. 2007).

[74] *Elphage*, 2013 WL 4721364, *5, citing, *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). *See also*, *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)("Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised.  'The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority.  Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'")(citing *Bazan ex rel. Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001)).

[75] *Hebert v. Maxwell*, 214 Fed.Appx. 451, 454 (5th Cir. 2007); *Garner v. Moore*, 2013 WL 3726801, *2 (5th Cir. July 17, 2013).

[76] *Buchanan v. Gulfport Police Dept.*, 2013 WL 2421949, *4 (5th Cir. 2013)(citing *Pearson v. Callahan*, 555 U.S. 223, 231, 236, 129 S.Ct. 808, 172 L.Ed.2d 565(2009).

[77] *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 457(5th Cir. 2001)(citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523(1987)).

qualified immunity."[78]  "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury."[79]

### 1.  Sheriff Gautreaux's Qualified Immunity Defense

Plaintiffs have not alleged that Sheriff Gautreaux was personally involved in the alleged constitutional deprivations, and it is well established, "[u]nder section 1983, [that] supervisory officials are not liable for actions of subordinates on any theory of vicarious liability."[80]  Therefore, the Court's focus shall be on whether Sheriff Gautreaux's conduct was objectively reasonable in his training, supervision, and monitoring of his Deputies.

"To impose liability for failure to train, 'the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.'"[81]  The Court finds, for similar reasons previously discussed, that Plaintiffs have failed to make specific allegations regarding how Sheriff Gautreaux was unreasonable in his training and supervising methods.  Instead, Plaintiffs have made generalized allegations that Sheriff Gautreaux inadequately supervised and trained his police officers,[82] failed to require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct,[83] and that he "had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action."[84]

For those reasons set forth above in its analysis of Plaintiffs' claims against Sheriff Gautreaux in his official capacity, the Court finds that Plaintiffs have failed to

---

[78] *Batiste v. Theriot*, 458 Fed.Appx. 351, 354 (5th Cir. 2012)(emphasis original)(citing *Id.*).
[79] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)(citation omitted).
[80] *Thompkins v. Belt*, 828 F.2d 298, at 303 (5th Cir. 1987).
[81] *Eason v. Frye*, 2013 WL 5278134, *7 (S.D.Ms. Sept. 18, 2013)(citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293)(5th Cir. 2005).
[82] Rec. Doc. 1, p. 14, ¶96; Rec. Doc. 10, p. 15, ¶96.
[83] Rec. Doc. 1, p. 14, ¶97; Rec. Doc. 10, p. 16, ¶ 97.
[84] Rec. Doc. 1, p. 13, ¶ 95; Rec. Doc. 10, p. 15, ¶10.

offer any probative evidence that Sheriff Gautreaux failed to reasonably train or supervise his employees, or that Sheriff Gautreaux had a custom or policy of allowing unsupervised, unskilled, inadequately trained, or inexperienced deputies to work. For instance, Plaintiffs have not alleged that, prior to the incidents in question, the Defendant Deputies had acted in an improperly negligent manner so as to deprive any other citizens of their constitutional rights. The Court further finds that the record is devoid of any allegations and evidence showing a pattern of similar intentional or negligent misconduct inflicted on other citizens by the Defendant Deputies. The Court also finds that Plaintiffs have failed to establish any unreasonable conduct on behalf of Sheriff Gautreaux. Consequently, Defendants' Motion for Summary Judgment is granted as to Defendant Sheriff Gautreaux's qualified immunity defense in his individual capacity.

### 2. Sergeant Bobby Moore's Qualified Immunity Defense

Defendant Moore asserts that Plaintiff Wagster's Fourth Amendment unlawful detention, false arrest, unlawful search and seizure claims arising out of the first police investigation on April 4, 2011 should be dismissed because he is entitled to qualified immunity. The Court notes that in their *Opposition*, Plaintiffs conceded that Moore's only alleged involvement in this case is limited to this specific visit.[85] The burden now rests on the Plaintiffs to rebut Moore's defense.[86] To defeat a Moore's affirmative defense of qualified immunity on summary judgment, the plaintiff must show genuine disputes of material fact: (1) that the defendants violated the plaintiff's constitutional

---

[85] Rec. Doc. 41, p. 2.
[86] *Hebert v. Maxwell*, 214 Fed.Appx. 451, 454 (5th Cir. 2007).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 15 of 39

rights, and (2) that the violation was objectively unreasonable in light of the clearly established law at the time of the incident.

### a. Unlawful Detention and Unlawful Arrest

Plaintiff Wagster has alleged that he was unlawfully arrested. Defendant Moore contends that Wagster was detained for resisting an officer; however, he also argues that article 213(1) of the Louisiana Code of Criminal Procedure provided him with the "authority for the arrest in the instant case."[87] Article 213(1) of the Louisiana Code of Criminal Procedure authorizes a law enforcement officer to arrest a person without a warrant when "[t]he person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor, it must be made immediately or on close pursuit."

"A police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."[88] In other words, "[a] temporary investigative stop of an individual is constitutionally allowed if it is based on reasonable suspicion of criminal activity."[89] "Reasonable suspicion requires the investigating officer to be able to point to 'specific … articulable facts' that, when taken together with rational inferences from those facts, reasonably warrant the … seizure."[90] In determining whether or not Moore possessed reasonable suspicion, we must take into account the totality of the circumstances or the whole picture from which Moore "must have a particularized and objective basis for suspecting the particular person stopped"

---

[87] Rec. Doc. 38-3, pp. 9 and 19.
[88] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).
[89] *Elphage*, 2013 WL 4721364, *6 (citing *Id.*).
[90] *Thomas v. Town of Jonesville*, 2013 WL 265235, *4 (W.D.La. Jan. 23, 2013)(citing *U.S. v. Peck*, 612 F.3d 341, 352 (5th Cir. 2010); *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006))(slip opinion).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 16 of 39

is engaged in wrongdoing.[91] "Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers."[92] "Law enforcement officers who reasonably but mistakenly conclude that reasonable suspicion or probable cause is present are entitled to qualified immunity."[93]

In contrast to a detention, a law enforcement officer must have probable cause in order to make an arrest. "Probably cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[94] Probable cause is an objective test and cannot be established based on an officer's subjective beliefs.[95] Instead, probable cause "depends on the facts known to the officer at the time of the arrest."[96] Moreover, "[p]robable cause requires only a probability of criminal activity, not proof beyond a reasonable doubt."[97] However, a law enforcement officer is still entitled to qualified immunity if he "reasonably but mistakenly conclude[s] that probable cause is present."[98]

The parties have stipulated to the fact that Defendant Moore was part of a U.S. Marshal's Task Force who were at Plaintiffs' residence looking for a fugitive from

---

[91] *U.S. v. Cortez*, 449 U.S. 411, 418 (1981)(internal citations omitted).
[92] *U.S. v. Holloway*, 962 F.2d 451, 459 (5th Cir. 1992); *see Sokolow*, 490 U.S. at 9. 109 S.Ct. at 1586-87.
[93] *Elphage*, 2013 WL 4721364, *6.
[94] *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004)(quoting *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996))(internal quotations marks omitted)(emphasis original).
[95] *U.S. v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996).
[96] *Besson v. Webre*, 738 F.Supp.2d 657, 661 (E.D.La. 2010)(citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204)(5th Cir. 2009)).
[97] *Besson v. Webre*, 738 F.Supp.2d 657, 661 (E.D.La. 2010)(citing *United States v. Froman*, 335 F.3d 882, 889)(5th Cir. 2004).
[98] *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589(1991)(quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Livingston Parish.[99]   The U.S. Marshal's Task Force did not have a warrant.   Plaintiff has alleged, and it is not disputed, that at some point after exiting his home he was handcuffed while on the ground; after the Officers searched Plaintiffs' residence, Wagster was later released from the handcuffs.[100]   However, the facts immediately preceding Wagster's detention or arrest are in dispute.

In Moore's affidavit he states that, while they were at Plaintiffs' residence, "Jason Wagster slammed the porch door on Task Force Officer Mike Lorio."[101]   In argument, Moore contends that Wagster also walked away from the Officers prior to slamming the door on Mike Lorio.[102]   Moore appears to contend that Plaintiff Wagster's actions justified his detention for resisting an officer (La. R.S. 14:108).[103] In contrast, however, Plaintiff Wagster attested in his affidavit that he "was cordial and compliant," "did not slam any screen door or any other door," and "did not try to walk away from the officers."[104]  Wagster further attested that "[n]o part of his conduct reflected an intention to resist Moore and the others."[105]

These differing factual accounts create genuine issues of material issues of fact that prevent the Court from making a determination as to whether Moore is entitled to qualified immunity.  The Court finds that even applying the lower standard of reasonable suspicion, the facts surrounding the alleged detention are disputed thus precluding summary judgment on both the unlawful detention and unlawful arrest claims.  As to Defendant Moore's assertion of the defense of qualified immunity, Defendants' *Motion*

---

[99] Rec. Doc. 38-4 and 41-1, p.1, ¶1.
[100] Rec. Doc. 1, pp. 7-8, ¶¶47; 49; 57; Rec. Doc. 10, pp. 8-9, ¶¶47-48; 57.
[101] Rec. Doc. 38-5, Exhibit A, Affidavit of Bobby Moore, p. 1, ¶6.
[102] Rec. Doc. 38-3, p. 9.
[103] Rec. Doc. 38-3, pp. 9 and 11.
[104] Rec. Doc. 41-2, Exhibit A, Affidavit of Jason Wagster, pp. 2-3, ¶¶9; 11, 13.
[105] Rec. Doc. 41-2, Exhibit A, Affidavit of Jason Wagster, p. 2, ¶13.

*for Summary Judgment* is denied on Plaintiff Wagster's unlawful detention and unlawful arrest claims.

### b.    Warrantless Entry Into Plaintiffs' Residence

Plaintiff Wagster has also alleged that Defendant Moore violated his Fourth Amendment rights when Moore searched the Wagster residence after his detention/arrest on April 4, 2011.  The parties do not dispute that, after Plaintiff Wagster was handcuffed, Defendant Moore entered Plaintiffs' residence.  Defendant Moore contends that exigent circumstances were present because: (1) the U.S. Marshal Task Force had information and belief that a fugitive from Livingston Parish resided at Plaintiffs' residence; and (2) he was concerned about his and other Officers' safety.  In support of his position, Moore relies upon *U.S. v. Howard*[106] where the Fifth Circuit found that exigent circumstances existed for a warrantless search of a detainee's home. In his *Opposition*, Plaintiff Wagster failed to address or counter Moore's allegations or argument with respect to this claim.  The law is clear that "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."[107]  The Court further notes that the plaintiff bears a heightened standard of negating a qualified immunity defense on summary judgment.[108]  As to Defendant Moore's assertion of the defense of qualified immunity, the Court grants Defendants' *Motion for Summary Judgment* as to Plaintiff Wagster's claims for unlawful search of his home under the Fourth Amendment.

---

[106] 106 F.3d 70 (5th Cir. 1997).
[107] *Kennan v. Tejada*, 290 F.3d 252, 262 (5th Cir. 2002)(citing *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995)(quoting *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986)) *and Frank C. Bailey Enterprises, Inc., v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir. 1978)).
[108] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 19 of 39

### 3.    Detective Nathan Harrison's Qualified Immunity Defense

Defendant Harrison has raised the qualified immunity defense to Plaintiff Wagster's Fourth Amendment claim of unlawful search of his home during the "second search" on April 4, 2011.[109] Harrison contends that Wagster consented to the second search of his home making the search lawful and Harrison's actions objectively reasonable.

At this point, the Court finds it necessary to address a contradiction in the record. Although Defendant, Detective Nathan Harrison, has attested to the fact that he was not present at Plaintiffs' home on January 7, 2011 and "was not involved in that investigation in any way,"[110] the Court notes this is in direct contradiction to the Defendants' *Statement of Uncontested Material Facts* wherein Defendants stipulate that: "On January 7, 2011, several EBRSO detectives, including ... Detective Nathan Harrison arrived to the Wagster residence. At the time, Jason Wagster was not home."[111] The Court finds that the Defendants have created a genuine issue of material fact as to whether Defendant Harrison was actually involved in the January 7, 2011 incident at the Wagster residence. Accordingly, the Court finding that a genuine issue of material fact exists as to Nathan Harrison's involvement in the January 7, 2011 investigation shall not dismiss Plaintiff Aucoin's claims against him on this basis.

Harrison also seeks qualified immunity arising out of the allegedly unlawful "second search" of Plaintiffs' home on April 4, 2011. Plaintiff Wagster has alleged that

---

[109] Rec. Doc. 38-3. In Plaintiffs' *Complaint* and *Amended Complaint*, they alleged they were subject to two separate searches on April 4, 2011 of their home in violation of the Fourth Amendment. The first search allegedly occurred around 8:00am with the second search at approximately 9:30am. Rec. Doc. 1, p. 8, ¶¶ 57- 58; Rec. Doc. 10, p. 9, ¶¶57-58.
[110] Rec. Doc. 38-6, Exhibit B, *Affidavit* of Nathan Harrison, ¶5.
[111] Rec. Doc. 38-4, p. 1, ¶1.

Case 3:12-cv-00011-SDD-SCR    Document 52    11/26/13    Page 20 of 39

the second search of his home violated his Fourth Amendment rights. In his *Opposition*, Plaintiff Wagster further contends that, although he signed a consent form allowing Harrison to search his home, he "did not consent to his home being searched" and that his "so-called 'consent' was obtained through duress and trauma."[112] He further argues that he "did not freely and voluntarily permit the officers to search the home—although I was afraid to deny their demands after the physical trauma which was inflicted upon me."[113] He supports his argument with his affidavit testimony attesting to the truth of these statements.[114] Harrison contends that Plaintiff Wagster is attempting to create an issue of fact by changing his testimony through his subsequent affidavit. The Court agrees.

"[A] nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."[115] "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out issues of fact."[116] And yet, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."[117]

---

[112] Rec. Doc. 41, p. 8.

[113] Rec. Doc. 41, p. 8.

[114] Rec. Doc. 41-2, Exhibit A, Affidavit of Jason Wagster, p. 3, ¶ 15. "Although I gave assent to the demanded search, my so-called 'consent' was obtained through duress and physical trauma. I did not freely and voluntarily permit the officers to search the home."

[115] *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *see, S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)(citations omitted).

[116] *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000)(citing *Perma Research and Dev.Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969)(citations omitted); *see also, Camfield Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983)).

[117] *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996); *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 21 of 39

In his deposition testimony Wagster stated that, before the Officers entered and searched his home, he "signed the paperwork" consisting of a consent form.[118] Wagster further testified that, during the Officers' search of his home, Defendant Harrison came outside and asked Wagster to accompany him back into the home. Wagster explained that Harrison "came out and said I notice you have a safe … can we search it and [Wagster] agreed"; thereafter, Wagster opened the safe.[119] After reviewing the record, the Court finds that Plaintiff Wagster's affidavit contradicts his prior deposition testimony regarding the search and does not create an issue of material fact regarding the lawfulness of the search of his home.

The Court now turns its attention to whether Harrison's actions of searching Plaintiffs' home were objectively reasonable under the law. "A warrantless entry into the home is presumptively unreasonable under the Fourth Amendment unless it is conducted pursuant to a valid consent."[120] "Consent may be express or implied by the circumstances surrounding the search or by a person's failure to object to the search."[121] The burden rests with the government to prove by a preponderance of the evidence "that consent was knowing and voluntary, given by a person with authority to give consent, and that the officer did not exceed the scope of consent at any point during the search."[122] Of these factors, it is only the first—that consent was knowing and voluntarily—that is at issue.

---

[118] Rec. Doc. 38-8, Exhibit D, Deposition of Jason Michael Wagster, pp. 47-48.

[119] Rec. Doc. 38-8, Exhibit D, Deposition of Jason Michael Wagster, p. 48.

[120] *Owens v. Town of Delhi*, 469 F.Supp.2d 403, 406 (W.D.La. 2007); *see, Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed. 2d 854 (1973)(citing *Davis v. United States*, 328 U.S. 582, 593-94, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); *U.S. v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)).

[121] *Owens v. Town of Delhi*, 469 F.Supp.2d at 406; *see, Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

[122] *Owens v. Town of Delhi*, 469 F.Supp.2d 403, 406 (W.D.La. 2007)(citing *United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000)); *see also, U.S. v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 22 of 39

To determine whether a party has given his or her consent voluntarily, the Court must examine a number of factors including the following: "1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found."[123] "No single factor is dispositive, and the voluntariness of consent must be determined from the totality of the circumstances."[124]

The Court finds that Harrison's conduct was objectively reasonable under the law because Wagster consented to the search of his home freely and voluntarily. In his *Opposition*, Plaintiff argues that Harrison "only arrived on April 4, 2011, after [Plaintiff] had been "detained and released."[125] Therefore, the Court concludes that, at the time of Harrison's request to search the Wagster residence, Plaintiff admittedly was not detained. In his deposition testimony, Wagster testified that one particular Officer could not participate in the search of his home because he was not welcome on the property; Wagster further testified that Moore instructed this unnamed Officer to get into his vehicle. The Court finds that Wagster's demand that the one Officer leave his property, demonstrates that he was aware of his right to refuse the Officers' request for consent and the Officers' compliance with Plaintiff's terms of consent.

The record is also devoid of any evidence that Defendant Harrison employed any coercive tactics—such as drawing his weapon, using hostile language, intimidation, or

---

[123] *U.S. v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997).
[124] *U.S. v. Jacobs*, 125 Fed.Appx. 518, 524 (5th Cir. 2005)(citing *U.S. v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997)).
[125] Rec. Doc. 41, p. 2.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 23 of 39

promises—or physically abused Wagster in order to obtain his consent. Instead, the record reveals that Wagster cooperated with Harrison as shown through his own deposition testimony where he acknowledged signing the consent form and then accompanying Harrison into his home to open a safe. Therefore, the Court finds Plaintiff's consent was knowing and voluntary, and that Harrison's search of the Plaintiffs' home was reasonable. Considering all of the facts and inferences in the light most favorable to Plaintiff Wagster, the Court finds that Wagster has failed to demonstrate that Defendant Harrison's search of his residence on April 4, 2011 was unconstitutional or otherwise unreasonable. Therefore, as to Defendant Harrison's assertion of the defense of qualified immunity, the Defendants' *Motion for Summary Judgment* is granted as to Plaintiff Wagster's Fourth Amendment claim for unlawful search.

      4.    <u>Aucoin's Fourth Amendment Claims Against EBRSO Narcotics Officers</u>

EBRSO Defendant Narcotics Officers Detective Rob Chambers, Detective Eric David, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, and Detective Eric Jones (collectively "Narcotics Officers") have raised the defense of qualified immunity to Plaintiff Aucoin's claims of illegal seizure and search of her person and home on January 7, 2011. The burden rests on Aucoin to rebut the affirmative defense.

      a.    **Plaintiff Aucoin's Unlawful Seizure Claim Against Narcotics Officers**

At most, Plaintiff Aucoin has raised a claim for unlawful detention with regard to the unlawful seizure of her person. Therefore, the Court incorporates its previous

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 24 of 39

discussion regarding the legal standard for unlawful detention under the Fourth Amendment, specifically reiterating that a temporary investigative stop is constitutionally permissible if it is based on suspicion of reasonable criminal activity.

The Narcotics Officers were allegedly at Plaintiffs' residence based on neighbors' complaints regarding the residence and its occupants. Specifically, they have argued that they were investigating neighbors' complaints of alleged drug activity to be occurring at the home by attempting to conduct a "knock and talk" investigation.[126] In her deposition testimony, Aucoin testified that she greeted the Narcotics Officers before they had an opportunity to knock.[127]

"Police officers with legitimate business may enter areas impliedly open to the public and are permitted the same license to intrude as a reasonably respectful citizen. Thus, when an officer of the law simply walks up to the door and knocks, (s)he visits the house in the same lawful way that a private citizen would, and the ensuing 'knock and talk' does not implicate the Fourth Amendment or its exceptions because no search or seizure occurs."[128] "Federal courts have recognized the 'knock and talk' strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity."[129] Here, the Narcotics Officers approached the house in response to neighbors' complaints regarding alleged drug activity; Plaintiff has offered no evidence to refute this. Accordingly, the Court finds that the Narcotics Officers' behavior was reasonable under the circumstances, Plaintiff

---

[126] Rec. Doc. 38-3, pp. 13-14.
[127] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, p. 40.
[128] *U.S. v. Major*, 2012 WL 1190253, *3(W.D.La. Feb. 17, 2012)(citing *U.S. v. Walters*, 529 F.Supp.2d 628, 637-38 (E.D.Tx. 2007)).
[129] *U.S. v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 25 of 39

Aucoin's action of opening the door to her residence signified her consent to confront the Narcotics Officers, and the Fourth Amendment was not implicated.

Moreover, the record is devoid of any allegation that Aucoin was physically detained, handcuffed, or arrested. In her deposition Aucoin testified that, during the January 7, 2011 incident, no one had: (1) ever told her that she could not enter her home,[130] (2) restricted her movement inside or outside of the home, or (3) tried to detain her.[131] She further explained that, during the incident, she never tried to leave her property.[132] In her *Opposition*, Aucoin contends that the Officers remained on the premises for approximately half an hour.[133]

The Court further finds that Aucoin's subsequent affidavit testimony cannot defeat the Narcotics Officers' summary judgment motion. In an affidavit filed after her deposition, and in response to the motion for summary judgment, Plaintiff Aucoin attested that "[t]o the extent [she] stated in [her] deposition that [she] was not restricted in [her] movement nor detained, [she] was speaking in terms of physical restriction/detention: No one actually grabbed [her] and prevented [her] from walking around the premises. However, [she] most assuredly felt that [she] was being detained on the premises, and [she] did not believe [she] was at liberty, for instance, to get into [her] automobile and simply leave."[134] Aucoin's affidavit is the only evidence she has offered to create a genuine issue of material fact to show that she had been detained by the Narcotics Officers. "Under the federal rules, when the sole evidence purporting to create a genuine issue of material fact and, thus, to preclude summary judgment is an

---

[130] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, p. 20.
[131] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, p. 20.
[132] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, p. 20.
[133] Rec. Doc. 41, p. 6.
[134] Rec. Doc. 41-3, Exhibit B, Affidavit of Elena Aucoin, p. 2, ¶8.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 26 of 39

affidavit that conflicts with deposition testimony, [the Fifth Circuit has] required an explanation of that conflict."[135]  The Court finds that Plaintiff Aucoin has failed to provide an explanation for the contradictory testimony; therefore, the Court will not consider her statement in conducting its analysis.

Construing all facts and inferences in the light most favorable to Plaintiff Aucoin, in combination with the evidence in the record before it, the Court concludes that Plaintiff Aucoin has failed to show a genuine issue of material fact that the Defendants violated her Fourth Amendment right to be free from unlawful detention.  Plaintiff Aucoin's deposition testimony establishes that she consented to confront the Narcotics Officers when she opened the door and met them on her property and that the Narcotics Officers' actions were reasonable under the totality of the circumstances to conduct a knock and talk.  The Court further finds that the Narcotics Officers had neither restricted her movement nor detained her.  As to the Defendants' assertion of the defense of qualified immunity, the Court grants Defendants' *Motion for Summary Judgment* as to EBRSO Defendant Narcotics Officers Chambers, David, Hill, Starnes, Stewart, and Jones on Plaintiff Aucoin's Fourth Amendment claims of unlawful seizure.

### b.    Plaintiff Aucoin's Unlawful Search Claim Against Narcotics Officers

The Narcotics Officers have also raised the qualified immunity defense regarding Plaintiff Aucoin's claim that her home was unlawfully searched on January 7, 2011.  The Court has already found that Plaintiff Aucoin's action of opening the door to her

---

[135] *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002)(citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)("It is well settle that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sowrn testimony.")).

residence signified her consent to confront the Narcotics Officers who have argued they were lawfully at the Wagster residence to conduct a "knock and talk" investigation based on a tip of narcotics activity occurring there.

The parties have stipulated to the fact that, on January 7, 2011, several EBRSO Detectives, including Detective Eric Jones, Detective Rob Chambers, Detective Len Starnes, and Detective Nathan Harrison, "asked Elena Aucoin for consent to enter the residence, but were denied. Consequently, the officers left without entering the residence."[136] In Plaintiff Aucoin's deposition testimony, she also testified that she neither gave the Narcotics Officers permission to enter her home nor did they enter her home at any time.[137]

However, Plaintiff Aucoin has also alleged that at one point during the January 7, 2011, incident when she re-entered her home to retrieve her brother, the "officers spread out and surrounded the home, with at least one (1) officer attempting to gain entry to the home through a side door, several of the officers banging on windows, and four (4) of the officers proceeding to the home's back porch and opening/inspecting the Plaintiffs' garbage can."[138] Plaintiff Aucoin has supplied an affidavit attesting that officers "began peering into windows, sorting through trash cans, and running plate numbers on vehicles in their driveway." The Narcotics Officers have not addressed these allegations and the record is devoid of evidentiary support to refute it.

"[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and

---

[136] Rec. Doc. 38-4, p. 2, ¶2.
[137] Rec. Doc 38-7, Exhibit C, Deposition Elena Nicole Aucoin, p. 19.
[138] Rec. Doc. 1, p. 6,¶31; Rec. Doc. 10, p. 6, ¶31.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 28 of 39

there be free from unreasonable governmental intrusion."[139]  Moreover, it is well settled that "[t]he Fourth Amendment's prohibition against unreasonable searches and seizures is not limited to the structure of the home itself, but includes the home's curtilage."[140] The curtilage is the area in which a person "reasonably may expect that the area in question should treated as the home itself."[141] The Court considers four factors to determine if an area is within the home's curtilage: "the proximity of the area to the home, whether it is within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from outside observation."[142]  With this being said, the Supreme Court has stated that "[t]he Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.  Nor does the mere fact an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible."[143]

Considering the totality of the circumstances—Defendants' attempted entry into the home through a side door, banging on windows, opening/inspecting the Plaintiffs' garbage cans on the home's porch, peering into windows—the Court finds that Plaintiff has satisfied her burden of demonstrating a genuine issue of material fact exists as to whether the Narcotics Offices violated her right to be free from unlawful searches and acted reasonably.  The Supreme Court has stated in the context of a "knock and talk"

---

[139] *Florida v. Jardines*, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013)(quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)).
[140] *U.S. v. Beene*, 2013 WL 5410017, *4 (W.D. La. Sept. 24, 2013)(slip copy)(referring to *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)).
[141] *U.S. v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).
[142] *U.S. v. Thomas*, 120 F.3d 564, 571(5th Cir. 1997).
[143] *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 1813, 90 L.Ed.2d 210 (1986).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 29 of 39

that the Fourth Amendment "would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window."[144] While the Court acknowledges that an officer engaged in a knock and talk "may observe items in plain view," such a lawful observation becomes an unlawful search when officers proceed to peer into the windows and persist efforts to gain entry into an individual's home after expressly being denied entry.

Therefore, as to the Defendants' assertion of the defense of qualified immunity, Defendants' *Motion for Summary Judgment* is denied as to EBRSO Defendant Narcotics Officers Chambers, David, Hill, Starnes, Stewart, and Jones on Plaintiff Aucoin's Fourth Amendment unlawful search claims.[145]

## C. Summary Judgment As to Lt. Michelli

Defendant Lieutenant Michelli has moved for summary judgment seeking the dismissal of all claims alleged against him because the Plaintiffs cannot establish that he was at their residence on either January 7, 2011 or April 4, 2011, or involved in either investigation.

In his deposition, Defendant Michelli denied being at the Plaintiffs' home on either January 7, 2011 or April 4, 2011.[146] Michelli also denied involvement in law enforcement's January 7, 2011 visit to the Plaintiffs' residence and their investigation.[147]

---

[144] *Florida v. Jardines*, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013)(quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)).
[145] To the extent that Plaintiff Wagster raised a claim for unlawful search of the Plaintiffs' property on January 7, 2011, this claim too would be dismissed for the same reasons set forth in the analysis of Plaintiff Aucoin's claim.
[146] Rec. Doc. 38-9, Exhibit E, Deposition of Darryl Michelli, p. 111.
[147] Rec. Doc. 38-9, Exhibit E, Deposition of Darryl Michelli, p. 130.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 30 of 39

He further denied having any involvement in the case.[148] In Aucoin's deposition, when asked if she saw or spoke to Darryl Michelli on January 7, 2011, she answered in the negative.[149] Based on her affidavit, Aucoin knew what Defendant Michelli looked like for identification purposes because she stated that Michelli had engaged in acts of intentional harassment in the past.[150] Wagster also testified he had no physical contact with Defendant Michelli during either incident and that he could not identify any misconduct on the part of Michelli at either occurrence.[151] Wagster could only speculate that Michelli "might have spearheaded [the incidents]."[152]

The Court finds that Defendant Michelli has demonstrated the absence of a genuine issue of material fact as to his involvement in the January 7, 2011 and April 4, 2011 events and that Plaintiffs have failed to satisfy their burden of offering evidence showing he was involved. Based on the evidence within the record, the Court finds that Defendant Michelli was not present at either incident. Accordingly, the Defendants' *Motion for Summary Judgment* is granted as to Defendant Michelli.

### D. Plaintiffs' State Law Claims

After reviewing the pleadings and other memoranda submitted by the parties, the Court concludes that the Plaintiffs have raised state law claims for false arrest, false imprisonment, assault, battery, and intentional infliction of emotional distress. The Plaintiffs have also alleged that Sheriff Gautreaux is vicariously liable under these state law claims. Defendants moved for summary judgment on all of Plaintiffs' state law

---

[148] Rec. Doc. 38-9, Exhibit E, Deposition of Darryl Michelli, p. 130.
[149] Rec. Doc. 38-7, Exhibit C, Deposition of Elena Nicole Aucoin, p. 2, ¶3.
[150] Rec. Doc. 41-3, Exhibit B, Affidavit of Elena Aucoin, p. 28.
[151] Rec. Doc. 38-8, Exhibit D, Deposition of Jason Michael Wagster, p. 54. Wagster answered in the negative when asked if Michelli ever touched Wagster.
[152] Rec. Doc. 38-8, Exhibit D, Deposition of Jason Michael Wagster, p. 55.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 31 of 39

claims. In response, Plaintiffs opposed Defendants' motion on all claims except their claim of intentional infliction of emotional distress.

### 1. False Arrest and Imprisonment

Plaintiffs have raised claims for false arrest regarding the alleged unlawful detention of Plaintiff Aucoin on January 7, 2011 and Plaintiff Wagster on April 4, 2011. "Under Louisiana law, the tort of false imprisonment or false arrest consists of two essential elements: detention of the person and the unlawfulness of the detention."[153] "False arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority."[154] "[I]f police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment."[155] Relying on our earlier reasoning and finding that Plaintiff Aucoin had not been unlawfully detained in violation of her Fourth Amendment rights, the Court further finds that Plaintiff Aucoin's state law claims for false arrest and imprisonment shall be dismissed for those same reasons.

As to Defendant Moore, the Court has already found that there are genuine issues of material fact in dispute regarding Plaintiff Wagster's unlawful detention and arrest claims arising under 42 U.S.C. § 1983. These factual disputes also prevent the Court from reaching a determination as to the lawfulness of Defendant Moore's actions in detaining and arresting Wagster under state law.

---

[153] *St. Cyr, III v. McDonald*, 2008 WL 4829309, *3 (M.D.La. Nov. 5, 2008).
[154] *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La. 1977).
[155] *Id.*

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 32 of 39

Accordingly, Defendants' *Motion for Summary Judgment* on Plaintiffs' state law claims of unlawful detention and unlawful arrest is granted as to all Defendants, except for Defendant Moore.

### 2. Plaintiff Wagster's Claims for Assault and Battery

Plaintiff Wagster has raised a state law claim for assault and battery arising out of his unlawful detention and arrest, and he contends that the Officers used excessive force.[156] Because Wagster has offered no evidentiary support to show that any other Officer's actions besides Defendant Moore may have risen to the level of unlawful tort for assault and battery under Louisiana law, the Court's focus shall be on Moore's actions in detaining Wagster.

In his affidavit Moore stated, "I made no physical contact with Jason Wagster other than handcuffing him. I handcuffed Jason Wagster in accordance with my training and the policies and procedures of the EBRSO. Further, at no time did Jason Wagster complain that his handcuffs were too tight or were hurting him."[157] In contrast, Plaintiff Wagster has attested to the fact that "Sgt. Moore made ample contact with [him] when he aggressively pulled [his] arms back and tightly ratcheted down the handcuffs."[158] Wagster has alleged that the handcuffs had been tightened so as to leave marks and abrasions.[159] According to Wagster's affidavit, he "was physically manhandled by Moore during this entire process, and [he] sustained significant injury as a result of Moore's physical abuse."[160]

---

[156] Rec. Doc. 41, p. 14.
[157] Rec. Doc. 38-5, Exhibit A, Affidavit of Bobby Moore, p. 1, ¶8.
[158] Rec. Doc. 41-2, Affidavit of Jason Wagster, p. 2, ¶13; Rec. Doc. 1, p. 7, ¶ 48; Rec. Doc. 10, p. 8, ¶48.
[159] Rec. Doc. 1, p. 7, ¶ 49; Rec. Doc. 10, p. 8, ¶49.
[160] Rec. Doc. 41-2, Affidavit of Jason Wagster, p. 2, ¶13.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 33 of 39

Battery is an intentional harmful or offensive contact with another person, whereas, an "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."[161] "Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that the law enforcement officer acted with unreasonable or excessive force."[162] "[I]n the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest."[163] "Excessive force transforms the ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages."[164] "Whether the force used is reasonable depends upon the totality of facts and circumstances in each case."[165] However, "absent a valid arrest, **any force used** to effectuate arrest is excessive and constitutes a battery."[166]

We have already determined that a genuine issue of material fact exists and precludes the Court from making a determination as to the lawfulness of Wagster's detention and arrest. Because we are able to make such a finding, it logically follows that the Court cannot make a determination as to whether Defendant Moore used

---

[161] *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987); La. R.S. 14:36.

[162] *Elphage*, 2013 WL4721364, *19 (citing *Gerard v. Parish of Jefferson*, 424 So.2d 440, 444 (La.Ct.App. 1982)(citing *Kyle v. City of New Orleans*, 353 So.2d 972, at 972 (La. 1977).

[163] *Taylor v. U.S.*, 1991 WL 280066 (E.D.La. Dec.19, 1991).

[164] *Penn v. St. Tammany Parish Sheriff's Office*, 2002-0893 (La.App. 1 Cir. 4/2/03), 843 So.2d 1157, 1161.

[165] *Kyle v. City of New Orleans*, 353 So.2d 972, 973 (La. 1977). In *Kyle*, the Louisiana Supreme Court set forth the following factors to consider to assess whether the amount of force was reasonable: "the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment." *Id.* *See also*, *Taylor v. U.S.*, 1991 WL 280066, *11 (E.D.La. 1991)(under Louisiana law, plaintiff had to show that law enforcement used excessive force because court found that his arrest had been lawful).

[166] *Rakestrau v. Neustrom*, 2013 WL 1452030, *12 (W.D.La. 2013)(slip opinion); *see also*, *Gray v. Horton*, 2008 WL 170664, *7 (W.D.La. 2008)(where the court reasoned "if the arrest is unlawful, then all force used to effectuate the arrest is excessive and constitutes a battery")(emphasis added).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 34 of 39

excessive force against Wagster, or, in the event of an unlawful detention or arrest, if that even need be proven. Therefore, the Court finds there is a genuine issue of material fact as to whether Wagster suffered a battery and was in reasonable apprehension of suffering a battery.

Accordingly, the Court grants Defendants' *Motion for Summary Judgment* on Plaintiff Wagster's claims of assault and battery as to all Defendants with the exception of Defendant Moore.

### 3. Intentional Infliction of Emotional Distress

Recently, this Court delineated the necessary elements that the plaintiff has the burden of proving in order to recover for intentional infliction of emotional distress; the plaintiff must prove: "(1) that the conduct of the defendants was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct."[167] Furthermore, "[t]he conduct complained of must be so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as utterly intolerable in a civilized community."[168] Moreover, "[l]iability arises only where the mental suffering or anguish is extreme, and the distress suffered must be such that no reasonable person could be expected to endure it."[169]

Even assuming that the Plaintiffs could satisfy the first and third elements to make a showing of intentional infliction of emotional distress, the Court finds that the

---

[167] *Elphage*, 2013 WL4721364, *20 (citing *White v. Monsanto Co.*, 585 So.2d 1205, 1209-1210 (La. 1991); *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 514 (5th Cir. 1994)).
[168] *Id.*
[169] *Id.*

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 35 of 39

Plaintiffs have failed to produce any relevant evidence establishing a genuine issue of material fact regarding the second element: that the emotional distress sustained by the Plaintiffs was severe. Plaintiff Aucoin, whose claims predominantly arise out of the January 7, 2011 event, has alleged she was detained outside of the home, where she was "aggressively" questioned and that she "felt humiliated, coerced, and threatened by these officers' extended stay at my home."[170] Plaintiff Wagster has alleged that, during the first April 4, 2011 incident, he sustained "severe neck injuries" and scraped knees when he was thrown to the ground by Defendants and that the handcuffs placed on his wrists were tightened "sufficiently to leave marks and abrasions."[171] Plaintiffs both contend that the actions of the Task Force Officers caused them "great embarrassment and humiliation."[172]

The Court must review all of the evidence and the record taken as a whole in the light most favorable to the Plaintiffs and draw all reasonable inferences in Plaintiffs' favor. After doing so, it is clear that the Plaintiffs have not presented sufficient summary judgment evidence to create a genuine dispute regarding each element of their claims for emotional distress. Plaintiffs have not submitted any evidence of severe emotional injury resulting from the Defendants' alleged conduct. For example, the Plaintiffs have not offered any evidence showing that they sought mental health treatment or counseling, experienced nightmares, or any other information suggesting that their mental distress was severe. Accordingly, the Court finds there is no genuine issue of material fact regarding whether the Plaintiffs have suffered from severe emotional

---

[170] Rec. Doc. 1, p. 6, ¶35; Rec. Doc. 10, p. 7, ¶ 35; Rec. Doc. 41-3, Affidavit of Elena Aucoin, p. 2, ¶11.
[171] Rec. Doc. 1, p. 7, ¶¶47-49; Rec. Doc. 10, p. 8, ¶¶47-49.
[172] Rec. Doc. 41-2, Exhibit A, Affidavit of Jason Wagster, p. 3, ¶¶13 and 16; Rec. Doc. 41-3, Exhibit B, Affidavit of Elena Aucoin, p. 2, ¶11.

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 36 of 39

distress. Therefore, the Court grants the Defendants' Motion for Summary Judgment on Plaintiffs' claims of intentional infliction of emotional distress.

### 4. Respondeat Superior

Plaintiffs claim that Sheriff Gautreaux (i.e., East Baton Rouge Sheriff's Office) is vicariously liable, under Louisiana law in his official capacity, for the alleged tortious misconduct of the deputies involved in the incidents forming the basis of this lawsuit. In Louisiana, sheriffs are only vicariously liable in their official capacity for the torts their deputies commit in the course and scope of employment.[173] The only potentially viable tortious acts for which Sheriff Gautreaux may be held vicariously liable are limited to Plaintiff Wagster's state law claims of unlawful arrest and detainment and assault and battery as to Defendant Moore. The Court has concluded that all of the Plaintiffs' remaining state court claims arising under tort must be dismissed.

Because the Court's determination of whether Wagster's state law claims of unlawful arrest and detainment, and assault and battery turn on facts that are in dispute, and because the Court cannot make findings of fact or credibility determinations at the summary judgment stage, the Court denies Defendants' *Motion for Summary Judgment* as to these claims against Sheriff Gautreaux in his official capacity under the theory of *respondeat superior*. The Court grants Defendants' *Motion for Summary Judgment* as to all other state law claims raised against Sheriff Gautreaux in his official capacity under the theory of *respondeat superior*.

---

[173]*Thomas v. Frederick*, 766 F.Supp. 540, 559 (W.D.La. 1991); *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So.2d 669, 669 (La. 1981).

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 37 of 39

## IV. CONCLUSION

Based on the foregoing, the Defendants' *Motion for Summary Judgment* is hereby GRANTED IN PART and DENIED IN PART. The Defendants' *Motion* is GRANTED as to Plaintiffs' 42 U.S.C. § 1983 official capacity claims against Sheriff Sidney J. Gautreaux, III, Lieutenant Darryl Michelli, Detective Rob Chambers, Detective Eric David, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, Detective Eric Jones, Sergeant Bobby Moore, and Detective Nathan Harrison. Accordingly, these Defendants are entitled to qualified immunity in their official capacity and these claims are hereby dismissed with prejudice.

The Defendants' *Motion* is GRANTED as to all claims against Lieutenant Michelli. All of Plaintiffs' claims against Defendant Michelli are hereby dismissed with prejudice.

The Defendants' *Motion* is GRANTED as to Plaintiffs' 42 U.S.C. § 1983 individual capacity claims against Sheriff Sidney J. Gautreaux for failure to train, monitor, and supervise; Plaintiff Wagster's Fourth Amendment claim against Defendant Sergeant Bobby Moore for the unlawful search of his home; and Plaintiff Aucoin's Fourth Amendment claims against Defendants Detective Rob Chambers, Detective Eric David, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, and Detective Eric Jones for unlawful seizure. Accordingly, these Defendants are entitled to qualified immunity in their individual capacity and Plaintiffs' claims are dismissed with prejudice.

Defendants' *Motion* hereby DENIED as to Defendant Sergeant Bobby Moore's defense of qualified immunity on Plaintiff Wagster's Fourth Amendment unlawful detention and unlawful arrest claims; as to Defendant Nathan Harrison's defense of

Case 3:12-cv-00011-SDD-SCR   Document 52   11/26/13   Page 38 of 39

qualified immunity on Plaintiff Aucoin's Fourth Amendment unlawful seizure claim against; and Defendants' Detective Rob Chambers, Detective Eric David, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, Detective Eric Jones, and Nathan Harrison defense of qualified immunity on Plaintiff Aucoin's Fourth Amendment unlawful search claims.

Defendants' *Motion* is GRANTED as to Plaintiffs' state law claims against Defendants Detective Rob Chambers, Detective Eric David, Detective Stephen Hill, Detective Leonard Starnes, Detective Brian Stewart, Detective Eric Jones, and Detective Nathan Harrison. Accordingly, these claims are dismissed with prejudice.

Defendants' *Motion* is DENIED as to Plaintiff Wagster's claims against Defendant Sergeant Bobby Moore for false arrest and imprisonment, and assault and battery.

Defendants' *Motion* is further GRANTED as to all of Plaintiff Aucoin's *respondeat superior* claims and Plaintiff Wagster's *respondeat superior* claim based upon intentional infliction of emotional distress against Defendant Sheriff Sidney J. Gautreaux. Accordingly, these claims are dismissed with prejudice.

Defendants' *Motion* is DENIED as to Plaintiff Wagster's *respondeat superior* claims based on false arrest and imprisonment, and assault and battery against Defendant Sheriff Sidney J. Gautreaux.

Signed in Baton Rouge, Louisiana, on <u>November 26, 2013</u>.


<u>Shelly D. Dick</u>
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**